(No. 78-CC-1392–)

BARBARA SMITH, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed October 11, 1989.*

GERALD M. HUNTER, for Claimant.

NEIL F. HARTIGAN, Attorney General (AL RYAN, Assistant Attorney General, of counsel), for Respondent.

BURKE, J.

This claim arises from an incident on September 13, 1976. On that date, the decedent, James Smith, visited his psychiatrist at the Sinisippi Medical Center and was then referred to the Singer Center. Decedent was driven by his brother-in-law to the Singer Center which is operated by the State of Illinois. Upon arrival at the facility, instead of going to the administration building to be admitted, he directed his brother-in-law to take him to a building where he had been housed in the adult mental health unit during a prior stay at Singer. However, since his discharge, that building was turned into an alcoholic treatment center.

Enroute to Singer decedent claimed he was Jesus Christ. At Singer, he saw a man with long hair and called him a "hippy" and asked another whether he was a "Mexican" or "Negro." Upon entering the alcohol treatment center, he picked up a chair, tipped over a table where two men were playing checkers, knocked a radio from a patient's hand, and knocked a carton of milk off a tray that was being carried by an old man. Two security guards responded to a call from a nurse in the center. Upon arriving on the scene they attempted to subdue the decedent. Decedent swiped at the badge of one of the security guards with sufficient force to remove it from the guard's shirt. The security officers then requested the help of two employees who also joined in to assist in subduing decedent. Decedent weighed approximately 300 pounds and stood 6'3" tall. He was taken down to the floor and handcuffed and in the ensuing struggle, suffered a heart attack. When it

was noted that he was no longer breathing, he was given CPR and oxygen, and taken by ambulance to Rockford Memorial Hospital where he was pronounced dead on arrival. The coroner's report indicated that he died of cardiac arrhythmia due to coronary arterial sclerosis. His obesity and previous condition were additional causes.

The case proceeded to trial on April 2, 1985. Evidence consisted of stipulations by the parties, witness testimony, expert testimony and deposition transcripts. Claimant and Respondent each filed briefs in support of their respective positions and oral arguments were heard on July 18, 1989.

At the time of the incident the decedent was not a patient of Singer Center. The nurses, security guards and other Singer facility employees owed a duty to the patients of the Singer facility, that is, to be secure in their life and person while confined under State authority. The actions of the security officers were reasonable and in line with the Department of Mental Health's safety protection policy and procedure manual. The Department's manual states that the responsibilities of its security officers, such as Sergeant McHugh and Ashcraft, include the safety and protection of patients and the quelling of disturbances (policy and procedure manual, section IV, page 5, paragraphs D.1, D.6), as well as the stopping of trespassers or undesirable visitors (manual, section III, page 2, paragraph A). The evidence in the instant case does not establish that the actions of the security officers were contrary to the standards and policy of the Department of Mental Health. Decedent's size and controllability dictated that the measures taken by the security officers and other employees of the center were taken to subdue decedent in order to protect other employees and patients from physical harm.

8

While there is undeniable sympathy for the family of the decedent, the force used was not excessive in this case. Accordingly, the claim is denied.